# A. W. WARNER

*v.*

# 345,393 FEET OF YELLOW PINE LUMBER.

Ponce, Admiralty, No. 260.

1. The charter party and the bill of lading is the best evidence of what a contract of shipment of goods referred to therein is.

NOTE.—*Shipping.*—As to demurrage and when it accrues, see note to The Conqueror, 41 L. ed. U. S. 937.

Warner v. 345,393 Feet of Yellow Pine Lumber.

2. A consignee of lumber who alleges that a custom exists of deducting 20% of the measurement on lumber that is dressed rather than rough has the burden upon him to show such custom.

3. Where the charter party provides that freightage on the lumber is payable only on its delivery, and where the same is delivered at the warehouse of the consignee for the convenience of the latter, and a dispute immediately arises as to the amount of money due for the freight, the shipmaster has not waived his lien upon the lumber. Healy v. 219,399 Feet of Dressed Yellow Pine Lumber, 2 Porto Rico. Fed. Rep. 401, 402, followed.

4. Where a cargo of lumber is being delivered to a consignee, and a dispute arises as to the amount of money due on account of the freight, and the consignee places what he considers the balance due in a bank with notice that if the master of the ship withdraws the money from the bank, it will be considered as an acceptance of the amount in full settlement, the withdrawal of the money under protest by the master is not binding, where as matter of fact a larger amount is due. It is not in the power of the consignee unilaterally to settle the dispute in that way, and there is no consideration for the master of the ship to make such new contract. The consignee, in paying the money, is only doing what he was by law obliged to do under the original contract between the parties.

5. The time a ship is held waiting for the convenience of the court to try the case is not properly chargeable as demurrage.

Opinion filed February 12, 1910.

---

*Mr. W. Vincent Robbins,* proctor for complainant.

*Mr. José A. Poventud,* proctor for respondent.

RODEY, Judge, delivered the following opinion:

This is a libel in admiralty filed by Mr. A. W. Warner, master of the American bark Boylston, of Boston as agent for John S. Emery & Company, Incorporated, who are presumably the own-

Warner v. 345,393 Feet of Yellow Pine Lumber.

ers, against the lumber mentioned in the caption. The facts are that Melchior, Armstrong & Dessau, of New York, on the 26th day of April, 1909, chartered the bark in question to go from Tuxpan in the Republic of Mexico, where it then was, to Carrabelle in the state of Florida, and there take on a cargo of not exceeding 350,000 superficial feet of yellow pine lumber, and proceed with and deliver it to consignor's order to Bonnin y Cia., their agents at Ponce, Porto Rico. The freight was to be paid on the lumber at the rate of $6.62½ per thousand superficial feet. In due course the ship proceeded as intended, and took on the cargo of lumber, which was measured and marked as it was being loaded, in the interest of both the charterers and the owners of the ship, by a sworn and independent surveyor, and was found to consist of 35,779 pieces of lumber containing 345,393 superficial feet. It transpired that 30,561 superficial feet of this cargo was dressed lumber. The bills of lading set out that the freight was to be paid "on actual superficial feet, contents delivered owners, . . . quality and measurements unknown to master."

When the ship arrived at Ponce and began to unload, the agents of the consignors Bonnin y Cia., ascertained by actual count that the cargo consisted of the full 35,779 pieces of lumber mentioned in the bill of lading, and a few additional pieces, but that the superficial measurement of the whole lot, according to their count, was 214,832 feet of rough lumber, and 104,449 feet of dressed lumber, which totaled 319,281 feet as against 345,393 feet mentioned in the bill of lading. They arrived at these figures by taking off 20% of the measurement for dressed lumber, which they claimed was the custom, and so they paid the captain as freight the sum of $2,115.24, which was at the

stipulated rate per thousand on the amount which they thus claimed to have received, but refused to pay freight on the 26,112 feet which they claimed as shortage under this alleged custom. The master refused to accede to this, and claimed the balance, and so the matter was referred by cable to the shippers in New York, but no satisfactory reply was received. After some considerable dispute over the matter without result, Bonnin y Cia. placed the last payment of the freightage which they acknowledge to be due, amounting to $790.24, in a local bank, and served a formal notarial notice on the master of the ship that such amount was all they would pay, and in substance stated to him that if he withdrew the money from the bank they would consider it an acceptance of their measurement of the lumber, and a full settlement of the matter. The master drew the money out of the bank but did it under protest, and claimed the balance, and immediately filed this libel under which a writ issued, and the lumber was attached, and in due course a forthcoming bond was given therefor.

In the forepart of October, 1909, owing to the inability of the court to proceed to Ponce for the trial of the cause, it was referred to H. P. Leake, as commissioner, to take the proofs and report the same to the court, with his findings of fact and law. A very spirited controversy ensued before the commissioner, and several days were occupied in taking the proofs, after which the matter was argued at length before the commissioner, and he thereafter in due course filed his report and findings, to which exceptions were duly presented.

The commissioner found entirely in favor of libellant. In January, 1910, the matter of the exceptions to the report was argued at length before the court itself, and thereafter the respective counsel filed memorandum briefs.

### Warner v. 345,393 Feet of Yellow Pine Lumber.

We have gone through the record and caused the commissioner to read the material portions of the evidence from his stenographic notes,—the same not having all been transcribed, in order to save expense,—and so having the evidence now well in mind, and also having the commissioner's careful and lengthy report before us, we are well prepared to decide the matter on the merits.

The claimants make several points which their counsel urges persistently. They are: that the commissioner erred in his finding against the existence of the custom to deduct 20% of the measurement for dressed lumber, whether the right to do so is mentioned in the bill of lading or not; in finding against the waiver of the lien for freightage by the master, because of the delivery of the lumber to Bonnin y Cia's warehouse at Ponce; because of the master withdrawing the last payment or tender of money from the bank; and further because of the commissioner finding in favor of the jurisdiction of the court, notwithstanding the removal of the lumber to the warehouse; and in finding for demurrage; and in finding in favor of the libellants at all, either for the balance claimed or for demurrage.

We have examined the evidence with care, and the report of the commissioner, and we think he was fully justified in finding on the evidence that the lien was not waived, because the delivery was not unconditional. See Re 4,885 Bags of Linseed, (Sears v. Wills) 1 Black, 108, 17 L. ed. 35; also The Eddy (Mordecai v. Lindsay) 5 Wall. 481, 18 L. ed. 486. See our opinion in Healy v. 219,399 Feet of Dressed Yellow Pine Lumber, 2 Porto Rico Fed. Rep. 401, 402, and cases cited, and we further think that the alleged custom of deducting 20% from the measurements of lumber because it was dressed, rather than

Warner v. 345,393 Feet of Yellow Pine Lumber.

rough, was not sustained, especially when the right to do so was not set forth in the bill of lading. We also think that he was fully justified in his finding that the money deposited in the bank was not accepted as a final payment by the master, and that it was not, under the circumstances, in the power of the agents here at Ponce to force a settlement by such duress. If they delivered the money at all to him it must be with an understanding, on his part, that it was in final settlement. There was no consideration moving to the master for this new contract, and this money, as well as the additional balance he claimed was then due him; consignees in paying this money were doing no more than they were already bound to do. See 9 Cyc. Law & Proc. p. 354 and cases cited.

In looking over the record we ascertain that a couple of letters from the shippers Melchior, Armstrong & Dessau, in New York, to their agents Bonnin y Cia. at Ponce, were tendered in evidence but rejected by the commissioner, but certified by him to the court for its opinion. These letters clearly show that at the time the lumber was loaded at Carrabelle in Florida, the sawmill people, or whoever it was that loaded the lumber for the shippers, tried hard to induce the master of the vessel to accept this 20% reduction on dressed lumber, but he absolutely refused to do so, and then they apparently accepted his terms, and gave him a bill of lading without that condition in it, and, evidently without his knowledge, wrote to their agents at Ponce to remeasure the lumber here and pay no attention to the master, but to pay him only the amount due him by the bill of lading less this 20% as they should find it on the remeasurement. We think the commissioner ought to have received these letters in evidence, although there was other evidence to the same effect,

to show that the master never entered into such a contract, but on the contrary positively refused to do so, regarding this 20% reduction, and that hence the bill of lading expresses the exact contract between the parties made under the charter party and which was understood before starting, and upon which the lumber was carried.  Besides this, it is well in evidence that there is grave doubt whether there is or ever was such a custom at all at the port of Ponce, but from the evidence it appears that if there is, it is never given force unless provision for it is made in the bill of lading between the parties.  It appears also in evidence, that it is the custom when this independent surveyor, at the point of shipment, who acts for both parties under oath, measures the lumber, and marks the superficial area on every piece of it, such measurement is always taken by the shipowner for every purpose, even on which to count his freight charges, and that he pays lighterage, port charges, and all other charges in accordance therewith, and if he delivers the number of pieces of lumber shipped without loss by storms or from any other cause he is entitled to collect his freight under the count of the bill of lading given him at the start.  This appears to be a common-course arrangement, and we fully agree with the commissioner in his finding to that effect.

We do not think, however, that the commissioner had any right to allow demurrage for more than three days.  The charter party calls for demurrage caused by default of the shipper, or his agents, the consignees, at the rate of $50 per day, and the evidence clearly showed that this wrongful refusal of Bonnin y Cia. to pay the proper contract freight charges caused three days' delay of the ship.  At the commencement of the hearing before the commissioner, libellant was permitted to amend and

Warner v. 345,393 Feet of Yellow Pine Lumber.

make a claim for three additional days of demurrage, on account of his having to wait for the convenience of the court in an effort to have the matter heard. This, we think, was wrong; and therefore the sum of $150, allowed on that account, will be stricken out, and the commissioner's report will, in all other respects, be confirmed; and will include a commissioner's fee of $75, which we consider was well earned, considering the large amount of labor involved in the controversy, and in the making up and writing of his report, and a decree to that effect will be entered, and it is so ordered.